Our last case of the morning is 120024 Todd Bueker v. Madison County. Are you ready to proceed? Happily ready? Yes. Good morning. My name is Aaron Weissar and I represent the plaintiffs in this case. I'm one of several lawyers in law firms that are representing the plaintiffs. May it please the court. Since the filing of this appeal, I think it's important to bring this to the court's attention also that there's been an affirmation of class certification in this case before the Fifth District Appellate Court for the purposes of liability. This appeal, however, concerns the dismissal of RLI Insurance Company as a defendant in this case and concerns whether or not the plaintiffs all have standing to bring this cause of action against RLI individually and also on behalf of the people that they represent, XREL and or for the use and benefit of the people of the state of Illinois. This case arises specifically out of the antitrust violations of Mr. Fred Bathon who is both a county collector and county treasurer for Madison County, Illinois. Our complaint describes an antitrust conspiracy by which the results of bidding at delinquent real estate tax sales were prearranged by Mr. Bathon and certain bidders at those tax auctions. The result of the scheme being that those who were delinquent in their taxes paid artificially inflated penalties and interest to redeem their properties as the tax buyers provided financial and other benefits to Mr. Bathon in the form of political contributions. As treasurer and county collector, Mr. Bathon was required to be bonded. He was required by Illinois law to have surety bonds and in this case RLI for the relevant period of time became his surety. There's two statutes, 55 ILCS 5-3-1003 and 35 ILCS 200-19-40. These two statutes govern the issuance of such surety bonds, one for the treasurer and another for the county collector in Lycoming. And both require that the treasurer and county collector, in this case Fred Bathon, be firmly bound and his surety firmly bound to the people of the state of Illinois. The liability therefore between Mr. Bathon, his bond principal, and his surety is coextensive. They have the same liability and accordingly plaintiffs submit that they could have sued one or the other or both of them. In this case, we've sued both of them in this case. Curiously, no one's ever maintained here that plaintiffs can't bring a suit against Fred Bathon, so why not his surety? Mr. Bathon, upon taking office, was charged to faithfully perform and discharge his duties as both treasurer and county collector. And that's what both of those statutes set out. That's his duty, to faithfully perform and discharge his duties. Having pled guilty before United States District Judge Herndon, it's undisputed that Mr. Bathon failed in this regard. Moreover, it's the people though, it's the plaintiffs in this case, the people of the state of Illinois, that he's ultimately failed. The longstanding and Supreme Court precedent of this state supports that individuals, such as the plaintiffs in this case, either themselves individually and or on behalf of the group that they represent, XREL, and for the benefit of the people of the state of Illinois, can bring such claims on public official bonds like the bond in this case. Does it depend upon the language of the bond? That's a good question. It does not necessarily depend upon the language of the bond. And I think that there's some case law here that's helpful for us. And in particular, the case of United States v. Howard that I've cited in our brief, stands that there can be some deficiency supplied by construction here, Your Honor. That, you know, when we're missing something, and let me quote from Howard, if you will, that it's usually provided in the statutes authorizing official bonds that they be brought upon them in the name of the official obligee. In this case, our bond, actually the statutes require, both statutes require that the state of Illinois be named as, the people of the state of Illinois be named as the obligee in both bonds. However, this bond names Madison County Government as the named obligee, which is, you know, certainly not correct. It's not in accordance with the statute, and so the statute needs to be looked at when determining who the obligee is. But when it does not specifically name obligees like our plaintiffs in this case, the case can be brought upon the relation or to the use of the party injured by the breach of the bond or anyone interested in its enforcement, even when this expressive provision is omitted from the statute itself. And that's from the Howard v. United States case. The rationale of such official bonds is that they're designed to secure the faithful performance of official duties, the discharge of which individuals and corporations have vested interests. They have a deep interest in it, and therefore should have the privilege of suing upon such bonds. In other words, it's not just to secure their public interests, the government, but also to redress the wrong individuals. In this case, the plaintiffs are certainly the individuals who have been wrong. The bonds are faithful performance bonds, so not unlike the two statutes at issue here, which require the issuance of treasurer and collector bonds, is the case of the Governor v. Dodd. It's an Illinois Supreme Court case, and we contend that this court's decision in Dodd is controlling here. Just like the statutes applicable for collector and for treasurer, the statute at issue in Dodd prescribed both the bond form and the condition of the bond. It was a circuit court clerk bond, but it's a statutory bond, and it's actually been virtually unchanged since 1874, much like the statutes here. And it does the same thing. It names the people of the state of Illinois as being the obligee. And this court said, and I think it's quite remarkable, again, that it said the plain and unmistakable meaning of this language. It seems so clear to us that we're at a loss to make more obvious. We do not have a shadow of a doubt that the circuit court clerk and his sureties are liable for any failure to perform an official duty. Could you help me understand this case? Yes. It's from 1876, lots of changes in procedure since then. I'm not sure I understand. Why is this entitled the governor of the state of Illinois as plaintiff? I'm not sure if I understand that necessarily either. However, it seems to me it sounds as if this is, well, I can't tell. Is it being brought in the name of the people of the state of Illinois, the governor? It seems to be what's happening is it's being brought in the name of the people, much like what we're doing here. Even though we have named individuals that we're still bringing the case, XRL for the benefit of the people of the state of Illinois. I mean, ultimately, in Dodd, just as in here, there's an individual. In that case, it was a corporation that was injured as a result of the circuit court clerk's failure to do something. But exactly why it's named governor, I don't know that that necessarily makes any difference here. I think it's still the idea that the case can still be brought in the name of the harmed individual. Except I'd suggest maybe it does have something important to say here, because the question here is who can be the plaintiff? And while, yes, there are very clear statements in this case from 1876 about plaintiffs, meaning the people who were injured, the fact is the plaintiff is the governor, is an elected official. And it just would raise questions in my mind whether or not the breadth of your interpretation should be somewhat limited by this adequate, maybe, but certainly a very real procedural position of this case. I don't know that it needs to be, just because it's the same as where we have, it's the same as what we have here, where there was a third party that was allowed to prevail, a third party that was allowed to make the claim on the bond, regardless of the fact that it's brought in the name of the governor. I think here it's the same issue. We're bringing the case, but we're bringing it on behalf of the harmed individuals. Was that case brought by the Attorney General? I do not believe it was. Now, there's another case that's cited in our brief that was brought by the Attorney General, but I do not believe this case was. But we contend that the Dodd case is still conditioned upon the faithful performance of the duty of the public official's office, and so the surety was ultimately found liable to the private corporation. It rests foundationally and unquestionably upon the premise that third parties not expressly named as obligees, but who are harmed by such public officials, may bring an action on the bond. It's therefore, having breached the condition of this bond, that Bathon and his surety here are both liable, based upon the decision of Dodd, and Dodd should trump the Fifth District Appellate Court case, as well as the case of Hicks v. Aetna, upon which it relies. Just as in Dodd, Bathon and his surety here can only escape liability by Bathon's faithful performance. Obviously, that didn't happen. Tax sales are also an official act of the county treasurer. He did all these things under his color of office. I mean, he used his office to orchestrate the conspiracy and enriched his campaign contributors in his campaign. The court in Dodd found no distinction in eBay between the court clerks or other officers. And so here, Bathon is another officer. And so the conditions of the bonds are the same. They're liability necessarily the same, and they're all held liable for the same nonfeasance of duty. Going quickly to a Fourth District Appellate Court case that I've cited in my brief, is the Bothman v. Brown case, which again, quotes from Dodd, but reiterates that anyone who may be injured by the official acts of the clerk, in this case it was a county clerk bond, any person who's injured by an official act is protected by such officer's bond. And as I mentioned in the case of Howard v. United States, which was a bond of the clerk of the United States, the court said we're of the opinion that Congress intended that the bond of a clerk be for the protection of all suitors, public or private. The bond of a clerk is for the benefit of every suitor injured by the failure of that officer to faithfully discharge his duties. RLI would also have us think, or have this court believe, that somehow this is a judgment bond, that there's something about it that requires the plaintiffs to go and to go get a judgment first against Madison County in order to prevail. And that doesn't make much sense here to us, because first of all, it's Fred Bathon who's the named principal. It's not Madison County. So the bond was intended to secure the faithful performance of Fred Bathon, not the faithful performance of Madison County. Furthermore, there's nothing in the statutes, there's nothing in the bond form itself that prescribes any duty upon plaintiffs here bringing the claim, the injured party, to do with something going to get a judgment first before being able to secure it, before being able to make a bond claim. We contend that the city of East St. Louis case versus Flanagan, which was an action on a treasurer's bond, is helpful for us. And that the court found it was without merit that an injured party would have to go and sue the city first in order to obtain a judgment. In that case, the treasurer was held liable through third persons on account of the unlawful acts of the treasurer. And how is getting a judgment first against Madison County going to help anybody? And we contend that it's not. I mean, they've actually probably more than anything been obstructionary in this case, defending and arguing against class certification as if trying to defend Bathon. So to let Madison County become the claimant here when they haven't done that, they've done nothing to try to secure money out of this bond claim, out of this bond to repay those parties who are really injured, puts the money back into Madison County's hands, which was, in a sense, maybe even rewarding the wrongdoers when perhaps the state's attorney and others turned a blind eye to what Bathon was actually doing. All that being said, Madison County has yet to make such a claim. We also contend that the city of Cairo, for the use and benefit of Robinson, for the use of Robinson v. Sheehan is instructed for this court, which was a police constable bond case. And it said, it will be observed that the above statute does not expressly provide  but went on to state that the weight of authority and the better reasoning is to the contrary. One of the conditions of the bond here is that the principal, just as in the case of Bathon, that he faithfully performed the duties enjoined to him. It's difficult to understand his benefit the condition was made for, if not for those that he might unlawfully harm. Whenever the express provision, again, is not made in the statutes, the court supplied efficiency by construction. And I cite to both the Howard case again and to the city of East St. Louis. Official bonds, therefore, are designed not only to secure public interest, but to redress wronged individuals. The better reasoning in the Cairo case refers to those cases where the wrongdoing of the official does not directly or negatively impact the government obligee financially. The government obligee here is Madison County. Madison County has not been harmed financially and so has no incentive to go and do anything. That's why the people here who have been harmed are trying to take action on this bond. The people were counting on Bathon to faithfully perform his duties, and they've been harmed by the rigged tax sales. They are the harmed plaintiffs in this case. Another Illinois Supreme Court case that we believe to be helpful for us, Your Honors, is the People v. Bartels. This was a probate court clerk case. Again, in Bartels, it was a probate court clerk who violated the duties of her office and therefore made her surety liable. It was found that the plaintiff, in the name of the people, had a direct cause of action against the clerk and her surety. Most recently, and it's cited in my brief, is the Cowper v. Nyberg case in which this case cited both to Dodd as well as to the People v. Bartels, acknowledging the long-recognized law of holding public officials liable for breaches of ministerial duties, both nonfeasance as well as misfeasance and malfeasance. Here, plaintiffs did what was exactly done in Bartels, consistent with Cairo as well as U.S. v. Howard. Plaintiffs brought this action upon the relation and to the use and benefit of the people of the state of Illinois, as well as themselves individually, but they're bringing it on behalf of all of those that are members of this class. The very purpose, therefore, of public official bonds is more than just to protect the name Babaji, in this case, Madison County. Accordingly, to the extent that a public official's acts are in breach of his ministerial duties, his surety could also be liable. Using the same analysis as in Cowper, Mathon breached his official and ministerial duties and therefore his surety should likewise be held liable. It's also important that the people have had a relationship here with Mathon. It's the plaintiffs in this case who have suffered a loss, financial loss, as a result of their properties, their taxes being sold, these tax sales, all under Mathon's color of office. And as this court said in Dowd, one virtually engages with the people when he assumes his duties in office. The Fifth District relied heavily upon the Hicks v. Zetnik case, which we believe to be against the star and decisis of this court and the state of Illinois, in that Hicks is an anomaly in the law and it's contrary to the precedent of this court and should just not be followed. And Hicks is distinguishable from this case. The instrument in Hicks was not a surety bond at all, but rather it was a blanket fidelity insurance policy. And so the court really had before it a false hypothetical because it wasn't dealing with a public official's bond at all. It was dealing with something else. It was dealing with a 3D policy, dishonesty, disappearance, and destruction policy. And that's part of what we contend why the court made perhaps the wrong decision. In Hicks there was no statutory bond required. What was issued was not even required by the Grain Dealers Act, which is what the case is based upon. A reading of the record makes it clear that the policy, this insurance policy, was actually just an idea of Governor Thompson to insure losses resulting from the dishonesty of certain state employees. It's an insurance policy. It speaks of insurance exclusions, policy limits. It's not a surety bond like what we have here, speaking of a surety or principle or an obligee. Unless there are further questions. Like it or not, RLI is Bathon Surety and the plaintiffs in this case and the class members they represent have been damaged by Fred Bathon. Plaintiffs may not expressly be named obligee, but the precedent of this court is such that the plaintiffs have standing to bring this case against RLI as Bathon Surety. The trial court's order dismissing RLI and the 5th District's affirmation of that dismissal should be reversed in this case, remanded back to Madison County for further proceedings. Thank you, Counsel. Thank you. May it please the Court, my name is Tim Meaton and I represent RLI. Let me begin by addressing Chief Justice Garment's question a moment ago. It doesn't depend on the language of the bond. My answer is yes, absolutely. It also depends on the language of the statute because the statute requires language that allows an individual who has been injured to bring an action on the bond or against the county. The statute does not provide implicitly for that type of cause of action because the legislature knows how to provide for situations where they want to give standing to aggrieved individuals. For example, in the Attorney General's statute that requires a bond, in the State's Attorney's statute that requires a bond, it says in the statute that an aggrieved individual may file a lawsuit. An aggrieved individual or an injured person. If you look at the Collector's statute, which is one of the statutes which is involved here, in the Collector's statute in Section 20-155, it provides for an aggrieved or injured person to be able to bring an action where the Collector has failed in certain defined responsibilities, such as to make reports or to make payments under the property tax code. The legislature has provided in that instance, in this very statute, that an injured person can bring an action. Wouldn't that be redundant if they could bring one anyway under the statute, which is what counsel is arguing here? The legislature knows how to include language, and this is true in other states as well. To answer your question, Justice Tice, I think it is important as to how these actions are brought. You're correct that in the Dodd case, the governor of the state of Illinois, and it says for use at 7, we don't have the full caption here, but it was not brought necessarily by an individual. In almost all the cases that counsel has cited, the city of East St. Louis, the city of Peoria, the people of the state of Illinois, that's who the bond runs against and that's who has standing to bring it. Let me talk about Dodd for just a moment, because this seems to be the principal case that is being relied upon by the plaintiffs in this case. Dodd is about a page and a half, and it deals with the issue of whether or not a clerk can be liable for nonfeasance in addition to misfeasance. In this case, the clerk had failed to write down or record a judgment. The judgment creditor brought an action against the debtor, and because it hadn't been recorded, they said in that instance, nonfeasance could be a basis for liability. That's why this court cited this case in the Calper v. Nyberg case recently. It wasn't for the proposition of who had standing. As a matter of fact, the word standing or who could bring this action doesn't appear anywhere in this page and a half opinion. So it's very scant authority to suggest that an individual can bring it when, as far as we know, the issue was never even raised. Mr. Reed, you rely on Hicks, right? Yes, in part. And Hicks distinguished Dodd on the basis that a private party didn't bring the suit. So scant or not, well, isn't it a fact first that a private party did bring the suit a second ago? And didn't this court hold that the clerk in assurities must be held liable for any loss or injury to that private party? If Hicks misread Dodd and did not understand the state of Illinois law at the time, does Hicks have any precedential value? Let me address that first of all with respect to Dodd, Your Honor, and then I'll get to the second part in terms of Hicks, because this court does not have to rely on Hicks defined in our favor. Of course, we're looking for this court to address the public policy and the statutory interpretation of the bonds and of the statute that's in play right now. And counsel said, well, the same language in 1876 was present as in this case we have before us. There's no way of saying it's the same language. And then cites of the 1999 version, he cites to exhibit our appendix two. We don't know whether it provided for an individual right of action or not. But the premise behind Hicks, to answer your specific question, is that when you're dealing with a public action, you're dealing with a public bond, there has to be specific language that the legislature provides for an individual right of suit. That issue was not addressed in Dodd's, and you're correct. It appeared to be only one judgment creditor. So despite the title of the governor of the state of Illinois, it appears one judgment creditor is suing, as far as I know. It actually has for use, et cetera, and I don't know what the additional language is in that case. But Dodd certainly is not precedent when the issue was not even addressed. Hicks was relying, I think, on more recent authority and cited to Amjur that the purpose of these statutes, and that's another point that I want to make. The purpose of these statutes, when you're dealing with treasures or collectors, not necessarily attorney general, not necessarily a state's bonds. That's the purpose. And the purpose is not served if you can allow individuals to come in and file individual lawsuits against our ally, who is the surety in this situation. For example, let me just illustrate how this case can get out of control. Council just mentioned the appellate court opinion, which we think is an important decision. They did find class certification on liability. They did not find class certification for injury, because they found the injury would be too individualized, and they also found that in many cases there would be no injury, because the penalty rate would be at 18% the highest anyway for most of these properties. So the 5th District did not certify classes to injury, which means what? It means that if there's liability that's found on behalf of BAPA, then you're going to have as many as 10,000 claims against our ally, because each individual person who was injured, if they all were injured, and I think there's some that were not intended, when they said the purpose of this was to protect public funds. The other thing that's important about that case that I think the court should be aware of is Madison County was dismissed as a defendant, because the court found under the one count, which was seeking something similar, I think it was had and received, something similar to an unjust enrichment, that Madison County did not The superior count, which was in the original complaint against Madison County, which was count 12 of the plaintiff's complaint, was dismissed in the trial court, believed to be a plea, and they never did. If you read the appellate court opinion, the only two counts that were left against Madison County were statutory counts, one sale and error, the other was based on had and received. Both were dismissed as a matter of law by the appellate court. So Madison County itself is not even involved in this lawsuit as of September 9th, and I think that makes a big difference when you're looking at what was this statute intended to do. There are no public funds at issue anymore. There are defendants, Batham himself, there are other people he conspired with, and that should not have happened, but there are other people that also are liable to these plaintiffs, but Madison County is no longer. So the purpose of this bond, which is to protect public funds, will not be met by opening the doors to these individual plaintiffs to come in for their injuries. Now, counsel says, well, they're the people of the state of Illinois. They're a subset of the people of Illinois. They are not the people of Illinois. The people of Illinois is represented typically by the state's attorney, by the attorney general. This court has just heard two cases this morning of the people of the state of Illinois, not by individuals. That's who the state of Illinois is, and that's who the employee is on the bond. The legislature knows how to make exceptions if they're going to allow an aggrieved or injured person to sue. They've done it in the collector's statute. They've done it in the attorney general's statute. They've done it in the state's attorney's office statute. They have not done it here. What would be the excuse? There will be several things. First of all, when the underwriters decide what premium needs to be charged for these bonds, they look at how often are cases brought, how often are public funds really in jeopardy in these cases, and they have a track record, and they look at deciding what a premium would be to cover their costs. If this court opens that door to every individual who may have been harmed individually, not the collective whole, then those premiums are going to skyrocket. And it's not just me saying that. We have amicus briefs from the Illinois County Treasurer's Association. We have amicus briefs from the County Government Association. That's their concern. And what happens if those companies either not get the insurance or the surety? What they will do is they'll self-insure. So now in this day and age where municipalities and counties are hard-pressed financially, they're going to have to set aside a million dollars as opposed to paying the premium because of the statute that requires them to do it. Another result will be if these companies cannot charge the premiums that are adequate enough to cover these additional lawsuits that they're going to have administrative costs, defense costs, they're simply going to get out of the business. And I say that because in some instances, and as pointed out again in the amicus briefs, some of the premiums are capped by statute. So if they can't charge enough, then they're going to get out of business. And where is that going to put the counties? Where is that going to put the treasurers and the collectors who are required to have these bonds? So the public policy ramifications of opening this door to just these plaintiffs is going to be significant. And that's a real concern. That's why we sought out the amicus briefs to support us in this position, because it is not just going to impact these plaintiffs who have a remedy. They've sued the person who did it, who acted outside the scope of his employment. Council said, well, maybe the state attorney knew about it. There's no respondent superior to the county plan. It's gone. Madison County is not liable. So what we would have would be a multitude of individualized injuries that are not even in a class being brought potentially against our ally. If the county's public funds are affected, they can make a claim against the bond. That's what it was intended to do. And if you look at the language of both the bond and the statute, it provides that it is to protect the faithful performance, which we agree with Council on that issue. But you have to read further. The faithful performance so the county treasurer or collector can turn over to the next county treasurer or collector money, papers, and records. That's the purpose of the bond. There may be instances when you're dealing with another type of officer where the bond is going to provide the individualized injuries can be provided for. That's not the case with the collectors. That's not the case with the treasurers. The state legislature knows how to make that distinction. And with all due respect, I would ask this court not to essentially amend this particular statute to allow aggrieved individuals to sue. The legislature can do that when they see the need. And in this case, and we all agree, the purpose of the bonds is to protect the public's funds. Period. Public funds are not an issue in this case. And we respectfully ask to affirm the outcome of the Fifth District. And I go back, Justice Thomas, to your question. Whether Hicks got it right or not, or had to use the right logic for analysis or not, or whether or not they viewed Dodd correctly or not. In my opinion, that's irrelevant. What is relevant is that this court now has the opportunity to speak and analyze this issue and set the record straight for the state and for its jurisprudence that these actions should not be allowed when the legislature has not permitted them. So we ask you to affirm the result in this case, not necessarily the reasons behind it. Thank you. Thank you. Again, the plaintiffs here are the injured party. Again, we rely upon Dodd as being controlling. It was a private corporation that brought the cause of action. It was a private corporation that was allowed to recover on that public official's bond. It should be no different here. This is about faithful performance of his duties. Bathon failed. He failed the people in the performance of his duties as county treasurer and county collector. It's more than just about the public funds. And I think cases cited in our briefs show that to be the fact, too. Including in the Howard case. It's not just about the funds that he might have in his control. It's also about the faithful performance of his duties as county treasurer and county collector. And that's more than just about the public funds that he has in his hands. Again, it's the people here who have been injured. Defendant's counsel suggests that because of the class certification only being for the purposes of liability at this point, there's this possibility that there's now 10,000 people or more that may make claims against our allies' bond. Well, there's a vehicle in the law to deal with that, too. In the event that we get down the road and there needs to be 10,000 mini-trials in this case, even though we have class certification for the purposes of liability, Bathon is still liable here. And so his surety, again, as I said in my opening comments, is co-extensively liable as well. They both bound themselves to the people of the state of Illinois. Not just Bathon, but both of them. And so in the event that we have penal sums on these bonds, which we do, our ally, by an interpleader, can interplead into the court the entire penal sum of that bond then for the court to later determine who's responsible for what the damages are for each individual party. So there's a process to deal with it in the event that here the bond penalty was actually exhausted. Again, I'd like to just reiterate that this is Fred Bathon's surety bond. He's the principal here. This is an agreement between the surety. It's a tripartite agreement between the surety and Fred Bathon and the people here who are the plaintiffs. It might be a subset of the people of the entire state, but they're the people who've been damaged as a result of Bathon's actions. In conclusion, we again would ask this court to reverse the 5th District Appellate Board and in this case be sent back to Madison County. Thank you. Case number 120024, Scott Buecher et al. v. Madison County will be taken under advisement as agenda number 15. Mr. Weisauer and Mr. Eaton, thank you for your arguments this morning. You are excused at this time. Marshal, the Supreme Court stands adjourned until 930 tomorrow morning.